UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE GOLDEN,<br>Plaintiff,<br>v.<br>CAROLYN W. COLVIN,<br>Defendant. | Case No. 16-cv-05362-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 18 |

## INTRODUCTION

Plaintiff Danielle Golden ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Pl.'s Mot., Dkt. No. 13; Def.'s Mot., Dkt. No. 18. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and the relevant legal authority, the Court hereby **GRANTS** Plaintiff's Motion and **DENIES** Defendant's Cross-Motion for the reasons set forth below.

## BACKGROUND

Plaintiff was born in 1981. She has an extensive history of alcohol and drug abuse, was homeless for five years, and has a documented history of psychiatric illness, including at least seventeen emergency psychiatric hospitalizations between 2010 and 2012. In July 2012, she began receiving inpatient psychiatric treatment. She alleges disability as the result of mental illness.

**SOCIAL SECURITY ADMINISTRATION PROCEEDINGS**

Plaintiff filed a claim for Supplemental Security Income under Title XVI, alleging disability beginning on December 31, 2005.[1] On August 22, 2013, the Social Security Administration ("SSA") denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. Plaintiff subsequently filed a request for reconsideration, which was denied on December 6, 2013. On December 18, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff did not appear at the February 23, 2015 hearing before ALJ Lisewski, but her non-attorney representative did. AR 33. ALJ Lisewski issued a notice to show cause for failure to appear. AR 175. Plaintiff's representative responded to the notice on March 4, 2015, and requested a supplemental hearing on Plaintiff's behalf. AR 177. The representative explained she had been unable to reach Plaintiff, who was homeless and did not have a working phone. *Id.* ALJ Lisewski found Plaintiff had constructively waived her right to appear at the hearing and issued an unfavorable decision on March 31, 2015. AR 13. The Appeals Council denied Plaintiff's request for review on July 26, 2016. AR 1-4. This appeal follows.

**A.    Medical Evidence of Record**

Plaintiff concedes that the relevant period for establishing disability for purposes of her eligibility under Title XVI is of April 8, 2013 through March 31, 2015, the date of the ALJ's decision . Reply at 3 (citing AR 13).

1.    Treatment Records

The AR demonstrates Plaintiff experienced significant disabling symptoms of mental illness for many years, leading to frequent psychiatric hospitalizations. *See, e.g.*, AR 327-330 (12/4/2010), 331-333 (10/22/2010), 334-336 (7/25/2010), 337-342 (1/8/2011), 623 (Plaintiff reports she was hospitalized more than twenty times), 643 (4/9/2012), 654-657 (7/16/2012). She was diagnosed with a psychotic disorder not otherwise specified, having bipolar disorder, and suffering from polysubstance abuse disorder. *Id.* (all); *see also* AR 572, 721. Plaintiff admitted

---

[1] Plaintiff also filed a Title II claim for disability insurance benefits, but now waives that claim. *See* Reply at 3, Dkt. No. 19.

using cocaine, methamphetamine, marijuana, and alcohol; she was not compliant with her medications, including her antipsychotic medication. *See id.* (all); *see also* AR 571-74, 623, 635-36.

In July 2012, Plaintiff was referred to Bonita House, a supported independent living program. *See* AR 579-615 (7/2012-4/2013), 624, 760-794 (6/2013-2/2014). In her first year working with Bonita House staff, Plaintiff met weekly with a case manager and monthly with a psychiatrist, Dr. Floyd Brown, M.D.; she was medication adherent unless her boyfriend failed to give them to her; she did not have any hospitalizations or incarcerations; and she reduced her alcohol consumption because she wanted to be a good parent. AR 762. Although she reduced her alcohol intake, she continued to drink daily: in June 2013, Plaintiff reported she was drinking 2 beers per day plus an estimated 4 to 5 shots of vodka. AR 769. Her mood had significantly stabilized, with no evidence of depressed, elevated, or irritable mood. *Id.* In August 2013, Plaintiff reported her children were now living with her; she showed no evidence of elevated, irritable, or depressed mood and reported good sleep; she had reduced her alcohol consumption to 2 beers per day. AR 774.

In September 2013, Dr. Brown acknowledged that Plaintiff's drinking exacerbated her symptoms. AR 778. Dr. Brown also stated that it was also true that Plaintiff's alcohol use was triggered by the increased severity of bipolar disorder due to a combination of self-medication, reduced judgment, and impulse control due to manic state. *Id.* He noted that Plaintiff's alcohol use had reduced with the stabilization of her symptoms. *Id.* In September 2013, Plaintiff indicated she wanted to stop drinking; Dr. Brown reported that Plaintiff was motivated more by the denial of her SSI benefits than a true desire to stop drinking. AR 780. Dr. Brown noted Plaintiff had appropriate affect with no evidence of elevated, irritable, or depressed mood; she reported good medication adherence. *Id.* In October 2013, she reported good medical adherence, reduced alcohol intake, and showed no evidence of elevated, irritable, or depressed mood. AR 784. Her "significant reduction" in alcohol use was confirmed by her case manager in November and December 2013. AR 786, 790. Plaintiff continued to report good medical adherence and

3

presented no signs of depressed mood. *Id.* (both). In February 2014, Plaintiff presented with pleasant affect and reported her mood was stable; she was taking an online computer course with the goal of becoming a web designer; her thinking was well organized; she reported good medication adherence and reduced drinking to one alcoholic beverage per day. AR 792.

In September 2013, Plaintiff's treating psychiatrist Dr. Brown completed a mental impairment questionnaire for Plaintiff. He diagnosed her as having Bipolar I Disorder; prescribed Abilify, Depakote, and Trazadone; and evaluated her as having 40 on the Global Assessment of Functioning (GAF) scale.[2] AR 755. His clinical findings included impulsivity, impaired judgment when in hypomanic state, and increased alcohol use resulting from unstable moods. AR 755. He opined that Plaintiff's impairments were not caused by substance abuse, but rather, that substance use was exacerbated by bipolar symptoms. *Id.*; *see also* AR 759 ("[A]lcohol dependence which results from unstable mood disorder with psychotic features. Alcohol use reduced with improved management of mood disorder."). He anticipated her impairments or treatment would cause Plaintiff to be absent from work more than four days per month. AR 756. He opined Plaintiff had numerous marked and moderate impairments of mental abilities and aptitudes needed to do unskilled, semi-skilled, and skilled work; and moderate impairments in her ability to interact with the public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation. AR 757-58. He opined Plaintiff had moderate restrictions in her activities of daily living; marked restrictions in maintaining social functioning; marked deficiencies of concentration, persistence, or pace; and would have four or

---

[2] The GAF does not correlate to the severity assessments utilized in Social Security disability determinations. While GAF scores therefore are not dispositive as to a claimant's general functional abilities, they are nonetheless relevant. *See Graham v. Astrue*, 385 Fed. App'x 704, 706 (9th Cir. 2010); *see also Wilkerson v. Berryhill*, 2017 WL 4340365, at *14 (N.D. Cal. Sept. 29, 2017) (failure of ALJ to consider GAF scores from acceptable medical source and other source or provide explanation for rejecting them was error). A GAF of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work. . . .)" Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. 2000). A GAF of 41-50 indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning. *Id*.

4

more repeated episodes of decompensation within a 12 month period, each lasting at least two weeks in duration. AR 758.

The following month, Dr. Brown also submitted a letter in support of Plaintiff's application for disability benefits. AR 671. He opined Plaintiff was totally disabled by her mental disorders, which include bipolar disorder and alcohol dependence, and that she had made strides toward improvement, but was likely to remain disabled for employment for the next 12-18 months. He stated Plaintiff's psychiatric condition interferes significantly with her ability to sustain attention, complete tasks, interact appropriately with others, and adapt to novel situations; it also leaves her prone to impulsive behaviors and impaired judgment. *Id.*

In February 2015, Dr. Brown submitted another mental impairment questionnaire describing Plaintiff's level of functioning. AR 700-03. Plaintiff had been sober for one month. AR 700. She nonetheless continued to exhibit manic symptoms, including poor judgment, lack of impulse control, pressured speech, and difficulty in concentrating. *Id.* Dr. Brown continued to find numerous marked and extreme limitations in Plaintiff's work-related mental activities, and that Plaintiff would be absent from work more than four days per month as a result of her impairments or treatment. AR 701-03. He observed Plaintiff's psychiatric condition interfered with her ability to follow up on appointments. AR 700. He assigned her a GAF of 40. *Id.*

2. Psychological Examiner

On May 7, 2013, Lesleigh Franklin, Ph.D., examined Plaintiff and submitted a psychological report based on a three-hour evaluation and numerous tests. AR 622-34. At the time of testing, Plaintiff reported she had abstained from cocaine and methamphetamine use for over a year, but she was still consuming alcohol daily. AR 623 (one to three drinks a day, five to seven times per week).

Dr. Franklin performed a variety of clinical tests to measure Plaintiff's abilities. She found Plaintiff's memory was "solid" and found Plaintiff demonstrated significant trouble with attention and concentration tasks and was impaired; had moderate difficulties in other areas of executive functioning; had adequate language skills; had variable performance on measures of visual spatial

abilities and was impaired; and had variable performance on her overall cognitive scores. AR 627-28. Plaintiff was not found to be exaggerating her symptoms. AR 628. Dr. Franklin opined Plaintiff's symptoms were consistent with the kinds of symptoms sometime seen in bipolar disorders, and should not be attributed solely to her substance abuse. AR 630. She diagnosed Plaintiff with Bipolar I Disorder, Severe with Psychotic Features; and Alcohol Dependence; she assessed Plaintiff's GAF at 45. AR 630. Dr. Franklin opined that Plaintiff's "drinking problem is exacerbating her mental health problem, but it is not the cause of it. Her bipolar disorder would definitely exist even if she was clean and sober." AR 631; *see also* AR 630 ("Her psychotic symptoms appear to be consistent with the kinds of symptoms sometime seen in Bipolar Disorders, and should not be attributed solely to her substance abuse."). While Plaintiff was not psychotic at the time of the evaluation, Dr. Franklin wrote Plaintiff could become psychotic quickly with a missed dose of medication or while under stress. AR 631. Plaintiff could be triggered by work stress into a manic state, in which case it would be difficult to predict her work behavior. AR 631. Overall, she assessed "extreme" or "marked" limitations in several areas of functioning needed to perform unskilled work. AR 634.

Dr. Franklin also observed that Plaintiff was slow moving and mildly confused in the way that can be seen with large doses of psychotropic medication. AR 626; *see also* AR 625 (observing that Plaintiff "appears to be on a lot of medications which are slowing her down"). She reported Plaintiff hated her medications because they made her feel tired and lifeless, like she has lost herself. AR 624. While the medications significantly reduced her psychosis, Plaintiff also reported they made her feel depressed and suicidal. AR 624.

3. <u>SSA Consultants</u>

SSA consultant Nicole Lazorwitz, Psy. D., reviewed Plaintiff's records through May 2013 and opined that Plaintiff's symptoms improved significantly while in treatment, that her mood improved when she was compliant with medication and treatment, that medication appeared to make her slow, and that her substance use appeared to be material as her symptoms significantly improves when she was compliant with treatment and medication. AR 46. Dr. Lazorwitz opined

6

that if Plaintiff continued to refrain from substances and follows treatment, it appears she could at least perform simple tasks with limited contacts. AR 46; *see also* AR 48 ("Claimant has extensive history of substance abuse and psychiatric symptoms. Noted history of significant improvement during times of sobriety and treatment compliance. Drug and alcohol abuse appears material. Without ongoing substance use, claimant's symptoms still appear to cause more than minimal impact on functioning, but do not entirely preclude significant gainful employment."). Dr. Lazorwitz acknowledged Dr. Franklin's assessment. AR 40. In explaining how she weighed Dr. Franklin's opinion, Dr. Lazorwitz stated: "Dr. Franklin's MSS appears to include [Claimant's] ongoing substance use, therefore taken into consideration within the context of other available evidence." *Id.*

At the reconsideration level, another SSA consultant reviewed Plaintiff's records through October 2013, including Dr. Brown's first opinion. AR 72, 77. H. Thomas Unger, M.D., opined that both Plaintiff's alcohol and drug addiction were material, and that Plaintiff would not be considered disabled without her substance abuse. AR 75-82. Dr. Unger explained he weighed Dr. Brown's opinion dated October 23, 2013: "Partially consistent with the objecting findings—Dx—Polysubstance dependence." AR 77.

Neither Drs. Lazowritz nor Unger reviewed Dr. Brown's February 2015 opinion.

## B. The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[3] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r*

---

[3] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

*Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since December 31, 2005. AR 19.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder and polysubstance abuse. AR 19.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff had an impairment or combination of impairments that meets the listings. AR 19-20. Specifically, the ALJ found Plaintiff's impairments met the requirements of Listing 12.04 for affective disorders and 12.09 for drug and/or alcohol abuse. *Id.* However, the ALJ found that without the effects of Plaintiff's drug and/or alcohol abuse, the limitations caused by Plaintiff's remaining impairment did not meet or equal any listing. *Id.*

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work

8

setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform the full range of exertional work, but was limited to simple, routine work with no more than occasional social interaction with coworkers, supervisors, and the public, and with some additional non-exertional limitations. AR 21-24.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do her past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined that if Plaintiff stopped her substance abuse, she would be unable to return to her past relevant work due to her non-exertional limitations. AR 21.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform work as a hotel housekeeper; officer helper; and hand packager, all of which were available in significant numbers in the national economy. AR 25, 36-37.

**LEGAL STANDARD**

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

1  U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by

2  substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*,

3  246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a

4  scintilla but less than a preponderance" of evidence that "a reasonable person might accept as

5  adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

6  (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The

7  court must consider the administrative record as a whole, weighing the evidence that both supports

8  and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

9  However, "where the evidence is susceptible to more than one rational interpretation," the court

10 must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

11 Determinations of credibility, resolution of conflicts in medical testimony, and all other

12 ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**DISCUSSION**

**A.   Whether the ALJ's Decision is Based on Substantial Evidence**

Because the ALJ's evaluation of the materiality of Plaintiff's substance use is inexorably intertwined with the ALJ's weighing of opinion evidence, the Court analyzes both issues together.

1.   <u>Opinions by Treating and Examining Physicians</u>

"Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

10

(nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an opinion of a treating physician should be favored over that of a non-treating physician. *Id.* at 830–31. However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). If a treating physician's opinion is uncontradicted, an ALJ must give "clear and convincing" reasons that are supported by substantial evidence to reject the opinion. *Lester*, 81 F.3d at 830-31. If the treating physician's opinion is contradicted, an ALJ needs to only give "specific and legitimate reasons [that are] supported by substantial evidence in the record" to reject the opinion. *Id.* Further, the opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a nonspecialist. 20 C.F.R. § 404.1527(c)(5); 20 C.F.R § 416.927(c)(5). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831 (describing circumstances in which opinion of nonexamining physician constituted substantial evidence). "The ALJ is responsible for determining credibility and resolving conflicts" or ambiguities in the medical evidence. *Magallanes*, 881 F.2d at 750.

Here, the ALJ placed "considerable weight" on the opinions of the two state consultants because these were based on a thorough review of the evidence, and they were not inconsistent with other substantial evidence of record. AR 23. Although the consultants had not been able to review Plaintiff's more recent records, including Dr. Brown's 2015 opinion, their "opinions continue to represent a reasonable consideration of [Plaintiff's] functioning given her treatment history and polysubstance use." *Id.*

The ALJ gave Dr. Brown's opinions no weight because: (1) Dr. Brown noted plaintiff's symptoms improved as her alcohol use was reduced, and (2) Dr. Brown formulated his opinion after Plaintiff had abstained for only one month, and "individuals often require more than one month of sobriety before discovering whether their symptoms truly arise from their mental impairments rather than their substance use." *Id.* The ALJ also placed little weight on Dr.

11

Franklin's opinion because: (1) Dr. Franklin saw Plaintiff only once; (2) Dr. Franklin did not have an opportunity to review the entire record; and (3) her opinions are not consistent with the overall record as it fails to adequately consider Plaintiff's drug and alcohol use. *Id.*

3. Materiality of Drug and Alcohol Use

If a claimant is found to be disabled and there is medical evidence of a substance use disorder, the ALJ must determine whether the substance use disorder is a contributing factor material to the determination of disability. AR 18. In making that determination, the ALJ must evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use. *Id.* If the remaining limitations would not be disabling, the substance use disorder is a contributing factor material to the determination of disability, and the claimant is not disabled. *See* 20 C.F.R. §§ 404.1535(b)(1), 416.935; *see generally Bustamante v. Massanari*, 262 F.3d 949, 956 (9th Cir. 2001). The claimant bears the burden of showing her substance use disorder is not a contributing factor material to disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

The ALJ found that Plaintiff's "depression" might continue to have more than a minimal impact on her ability to perform basic work activities even if Plaintiff stopped her substance use. AR 20. The ALJ's finding was based on the fact Plaintiff "continued to complain of depression during periods where it appeared she was clean and sober, though the record is not dispositive." *Id.* The ALJ then determined that if Plaintiff stopped her substance use, she would not have an impairment or combination of impairments that meets or medically equals any impairments because she would only have mild restrictions in activities of daily living; moderate restrictions in social functioning; and moderate difficulties in concentration, persistence or pace. *Id.* The ALJ further determined that the absence of drug and alcohol would significantly improve Plaintiff's sleep disturbances, energy level, attention and concentration; "she would no longer suffer from auditory hallucinations"; and she would experience no episodes of decompensation. *Id.* The ALJ found there "is no history of any episodes of decompensation or of an inability to function outside of a highly supportive living arrangement. There is no evidence that a residual disease process

12

that has resulted in marginal adjustment such that even a minimal increase in mental demands or change in environment would be predicted to cause the claimant to decompensation." AR 21. The ALJ did not identify the evidence that supports these conclusions. *Id.*

In evaluating Plaintiff's RFC, the ALJ found Plaintiff had failed to "present conclusive evidence that, if she ceased using drugs and alcohol, her mental impairment would remain disabling. The overall record shows that her drug use has been continuous since at least 2008 with very little active mental health treatment." AR 22. The ALJ summarized Plaintiff's numerous hospitalizations prior to mid-2012, and then the improvement in Plaintiff's symptoms after she began working with the Bonita House. AR 22. Reviewing Plaintiff's most recent clinical notes from February 2014, the ALJ observed that Plaintiff's mood was stable and her thinking was well organized without evidence of hypomanic, depression, delusions, loose or tangential associations, or auditory hallucinations; she was taking her medications without complaint; and she was taking an online computer course. AR 22 (citing Ex. 32/F at 33). She concluded that, "[b]ased on the overall record, there is no evidence to support the notion that the disabling effects of the claimant's mental impairments would remain in the absence of all drug and alcohol use." *Id.*

4. Analysis

By the time Dr. Brown offered his first opinion regarding Plaintiff's functioning, he had been treating Plaintiff monthly for eleven months; by the time he offered his second opinion, he had been treating her monthly for two-and-a-half years. Dr. Brown completed progress notes for Plaintiff's visits in which he documented her progress and her problems. Based on his treatment of Plaintiff, he opined that Plaintiff's substance abuse was exacerbated by her bipolar symptoms, and that alcohol use did not cause her bipolar disorder. AR 755; *see also* AR 759 (alcohol dependence results from unstable mood disorder), 778. Similarly, after examining and testing Plaintiff for three hours, Dr. Franklin opined that Plaintiff's "bipolar disorder would definitively exist even if she was clean and sober." AR 631. Plaintiff reported she had stopped using marijuana, cocaine, and methamphetamines in June 2012. AR 765. By the time Dr. Franklin completed her evaluation in July 2013, Plaintiff had stopped using cocaine and methamphetamine

13

for approximately one year; by the time Dr. Brown completed his evaluation in September 2013, Plaintiff had abstained from these drugs for more than one year. Plaintiff also had reduced her alcohol consumption to two beers per day. AR 774, 780; *see also* AR 792 (by February 2014, she had reduced her alcohol consumption to a single 24 ounce beverage with 12% alcohol content). By the time he completed his evaluation in February 2015, Plaintiff had stopped drinking alcohol for one month. AR 700. At that point, Dr. Brown opined Plaintiff continued to exhibit manic symptoms and that as a result of her psychiatric condition, she had trouble following through with appointments. AR 700.

Both Drs. Brown and Franklin opined that Plaintiff's bipolar disorder symptoms would continue to impair her ability to work if she was clean and sober, and Dr. Brown found that Plaintiff's symptoms in fact did continue when Plaintiff was clean and sober. The ALJ gave no weight to either of these opinions, relying instead on the opinions of the SSA non-examining consultants who found that Plaintiff's substance use was material. The contrary opinions by Drs. Lazorwitz and Unger cannot by themselves "constitute substantial evidence that justifies the rejection" of Drs. Brown and Franklin's opinions. *See Lester*, 81 F.3d at 831; *Buck v. Berryhill*, 869 F.3d 1040, 1049-50 (9th Cir. 2017) (applying *Lester* and finding it was error for ALJ to reject opinion of examining physician based on opinion of non-examining expert, especially when opinion of non-examining expert is contradicted by other source).[4] The ALJ fails to identify any other substantial evidence supporting her rejection of the opinions submitted by Drs. Brown and Franklin.

First, the ALJ did not acknowledge the nature of Plaintiff's bipolar disorder.[5] The ALJ

---

[4] It is not clear these opinions in fact contradict the key opinions of Drs. Brown and Franklin that Plaintiff's bipolar disorder exacerbated her drinking, and was not caused by her drinking. Neither the two consultants nor the ALJ addressed these specific conclusions. The consultants also did not differentiate between the impact of Plaintiff's drug use, which had ceased approximately one year before Drs. Brown and Franklin offered their opinions, and her alcohol use, which had decreased but did not cease. This distinction is not material, as the Court concludes the ALJ failed to offer specific and legitimate reasons for rejecting the opinions of Drs. Brown and Franklin.

[5] Indeed, the ALJ found that if Plaintiff stopped the substance use, Plaintiff *might* continue to have severe impairment caused by *depression*. AR 20 ("The claimant continues to complain of

14

based her conclusion that drug and alcohol use were material on the fact Plaintiff had improved significantly by February 2014, when Dr. Brown noted that Plaintiff's mood was stable and her thinking was well organized without evidence of hypomanic, depression, delusions, loose or tangential associations, or auditory hallucinations; she was taking her medications without complaint; and she was taking an online computer course. AR 22. But the ALJ did not address Dr. Brown's concurrent assessment that Plaintiff continued to present a moderate level of risk due to chronic conditions, "with high risk of psychiatric relapse and poor medication adherence." AR 793. Similarly, because the ALJ gave no weight to Dr. Franklin's opinion, the ALJ did not take into account Dr. Franklin's observation that Plaintiff has continued to demonstrate mood instability even as she improved with treatment, and that Plaintiff sometimes appeared manic, and other times appeared sad, hopeless, and despondent. AR 631. The ALJ also did not acknowledge Dr. Franklin's opinion that Plaintiff "could become psychotic quickly with a missed dose of medication or while under stress." *Id.*; *see also id.* ("Due to the nature of her illness, [Plaintiff] could be triggered by work stress into a manic state. If this were to occur, it is difficult to predict [her] work behavior."). Thus, while the ALJ accurately identifies evidence of improvement in the record, she fails to examine this evidence in the broader context of Plaintiff's diagnosed bipolar disorder. "It is the nature of bipolar disorder that symptoms wax and wane over time. With respect to such impairments, 'improvement . . . that is only temporary will not warrant a finding of medical improvement.'" *Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) (error to point to isolated signs of improvement; ALJ could not support finding of improvement unless claimant showed sustained improvement) (quoting 20 C.F.R. § 404.1594(c)(3)(iv)); *see also Michalski v. Colvin*, 2016 WL 4585570, at *8 (N.D. Cal. Sept. 2, 2016) ("DSM-V notes that 'many individuals with bipolar disorder return to fully functional levels between episodes.'"). The fact Plaintiff did not act depressed and was not in an active manic state during certain appointments with Dr. Brown does not constitute substantial evidence that her bipolar disorder is sufficiently improved to

---

depression during period where it appeared she was clean and sober, though the record is not dispositive."). Depression is but one of the symptoms of Plaintiff's bipolar disorder.

15

contradict the limitations identified by Drs. Brown and Foster.

Second, there is no evidence in the record to support the ALJ's apparent opinion that the level of alcohol Plaintiff was consuming at the time of Dr. Brown's and Dr. Franklin's evaluations was a material contributor to the mental impairments Drs. Brown and Franklin continued to identify. Drs. Lazorwitz and Unger do not distinguish between Plaintiff's admitted use of cocaine and methamphetamine, her heavier use of alcohol when she first began treatment through Bonita House, and the two (or no) drinks per day Plaintiff was having at the time Drs. Brown and Franklin offered their opinions about her functionality.

Third, the ALJ misstated the evidence when she interpreted Dr. Brown's notes that "Plaintiff improved as her alcohol use reduced, indicat[ed] that her alcohol use has played a significant part in her functioning." AR 23. In fact, as described above, Dr. Brown indicated repeatedly that Plaintiff's alcohol use was reduced as her symptoms improved and that Plaintiff drinks more as a result of her bipolar disorder. The ALJ also notes that Dr. Brown indicated Plaintiff remains symptomatic after abstaining from alcohol for only a month, but argues this opinion is not well-supported by the objective medical evidence nor consistent with the record because "individuals often require more than one month of sobriety before discovering whether their symptoms truly arise from their mental impairments rather than their substance use." AR 23 (referring to Dr. Brown's February 2015 mental impairment questionnaire (AR 700-703)). By this time, Dr. Brown had been treating Plaintiff on a monthly basis for two-and-a-half years. The ALJ offers no basis for her assumption that Dr. Brown, as a licensed psychiatrist working with Bonita House's clientele and with Plaintiff in particular, might not be aware of the amount of sobriety required before discovering whether a patient's symptoms truly arise from mental impairments rather than substance abuse. Moreover, a Social Security claimant need not demonstrate a period of abstinence from substance use in order to be considered disabled. "[A]n acceptable medical source can provide a medical opinion regarding whether the claimant's impairments would be severely limiting even if the claimant stopped abusing drugs or alcohol. We consider the opinion of an acceptable medical source sufficient evidence regarding materiality as long as the acceptable

16

medical source provides support for their opinion." Soc. Sec. R. 13-2p(6)(c)(4). There is no dispute Dr. Brown is an acceptable medical source. He provided support for his first opinion by explaining that Plaintiff's disorder exacerbated her drinking and that her drinking did not cause her bipolar disorder or manic states, even if it could exacerbate them. He also provided support for his opinion that, even when sober, Plaintiff continued to exhibit manic symptoms, including poor judgment, lack of impulse control, pressured speech, and difficulty concentration. He further explained that Plaintiff had difficulty following through with appointments because of her condition.

Fourth, the ALJ offers no basis for her assumption that Dr. Franklin's examination "fails to adequately consider" Plaintiff's drug and alcohol use (AR 23). As indicated above, Dr. Franklin opined Plaintiff's psychotic symptoms appear to be consistent with the kinds of symptoms sometime seen in bipolar disorder, and should not be attributed solely to her substance abuse; that Plaintiff would continue to be disabled even when clean and sober; and that Plaintiff could be "quickly" triggered into a manic state by one missed dose of medication or by a work stress (AR 630-31). Thus, the evidence demonstrates Dr. Franklin did explicitly consider Plaintiff's substance abuse in evaluating her ability to work.[6]

For these reasons, the Court finds the ALJ did not articulate specific and legitimate reasons for rejecting the opinions of Drs. Brown and Franklin, and did not base her finding that Plaintiff's drug and alcohol abuse was material to her impairment on substantial evidence.

---

[6] The ALJ's remaining reasons for rejecting Dr. Franklin's opinions are not legitimate. The ALJ rejected Dr. Franklin's conclusions because she only saw Plaintiff once. AR 23. While this might be a specific and legitimate reason for rejecting Dr. Franklin's opinion in favor of the opinion of a physician who saw Plaintiff more than once, here the ALJ relied instead on the opinions of SSA consultants who never saw Plaintiff. The ALJ also rejected Dr. Franklin's opinion because Dr. Franklin had not had the opportunity to review the entire record. *Id.* But the ALJ placed considerable weight on the opinions of the non-examining SSA consultants despite the fact they were not able to consider the full record. *Id.* Dr. Franklin's July 2013 opinion reflects a thorough summary of Plaintiff's medical history and is consistent with Dr. Brown's September 2013 opinion, and the ALJ does no identify what records she believes Dr. Franklin would have needed to consider to render her opinion worthy of consideration.

17

**B. Plaintiff's Nonappearance at the Hearing**

Plaintiff argues the ALJ erred in denying her request for a hearing without determining whether she had good cause for failing to appear at the original hearing. *See* Pl.'s Mot. at 8-10.

At the February 23, 2015 hearing, Plaintiff's representative appeared but Plaintiff did not. When an appointed representative appears at the hearing, and continues to represent the claimant at the hearing but is unable to locate the claimant, the ALJ may determine the claimant has constructively waived the right to appear. HALLEX I-2-4-25(D)(2)(a) (Appointed Representative Appears at Hearing Without the Claimant).[7] The ALJ did not find Plaintiff had constructively waived her right to appear during the hearing; on the contrary, she noted on the record that she would "issue a notice to show cause and see where we go from there. I will consider, depending on what comes in, I will consider whether if she was a necessary witness." AR 35-36. The ALJ issued the notice requesting Plaintiff show cause for her failure to appear; if the ALJ decided Plaintiff had a good reason for missing the hearing, another hearing would be scheduled. AR 175.

Plaintiff's representative responded on her behalf, explaining she was unable to locate Plaintiff, but had learned from Plaintiff's father that Plaintiff was homeless, had no phone, and was emotionally unstable. AR 177. Plaintiff's representative asked the ALJ to consider these circumstances as good cause for the failure to appear and asked for a hearing to be scheduled so that Plaintiff could testify. *Id.* "The term 'good cause' refers to a reasonable explanation for failing to comply with a requirement. When determining whether good cause exists . . . an ALJ must base his or her decision on the circumstances of each individual case. In doing so, the ALJ must consider any physical, mental, educational, or linguistic limitations that may have prevented the claimant from appearing at the scheduled time and place of the hearing." HALLEX I-2-4-25(B). Circumstances that generally establish good cause include "unforeseeable events" that did not provide the claimant or her representative enough time to notify the ALJ and request a

---

[7] HALLEX is the Commissioner's Hearings, Appeals, and Litigation Manual, an internal SSA policy manual. *Lockwood v. Comm'r of Soc. Sec.*, 616 F.3d 1068, 1072 (9th Cir. 2010). It is not binding upon this Court. *Id.*

18

postponement of the hearing. HALLEX I-2-4-25(C)(1)(b).

The ALJ did not schedule a subsequent hearing, and also did not address whether the circumstances stated in the response to the notice constituted good cause. In her decision, the ALJ stated only that Plaintiff's representative had been unable to locate Plaintiff. AR 16. The ALJ did not evaluate the mental and physical limitations Plaintiff's representative identified in her response, and did not specifically address why the proffered reasons for missing the hearing did not constitute good cause. Citing HALLEX I-2-4-25(2)(a), the ALJ nevertheless found Plaintiff had constructively waived her right to appear. AR 16.

If an ALJ finds the claimant has constructively waived the right to appear at the hearing, "the ALJ will advise the appointed representative, either on the record during the hearing or in writing thereafter, that he or she will not sent a Request to Show Cause for Failure to Appear to the claimant." HALLEX I-2-4-25(D)(2)(a). If an ALJ finds the claimant has *not* constructively waived the right to appear, the ALJ will advise the representative that a Request to Show Cause will be sent to ask why she did not appear at the hearing. After the response period expires, if the claimant fails to respond to the request to show cause or fails to show good cause for failing to appear, the ALJ may determine the claimant has constructively waived her right to appear and issue a decision based on the evidence of record. HALLEX I-2-4-25(D)(2)(b). Based on the record, it appears the ALJ proceeded under section (D)(2)(b), which requires the ALJ to evaluate whether Plaintiff had shown good cause for failing to appear, and not (D)(2)(a). The ALJ's failure to do so was error.

Defendant nevertheless argues that any error was harmless because Plaintiff's presence at the hearing was not necessary. Def.'s Mot. at 4-5. The Court does not agree. The ALJ rejected the opinions of Plaintiff's treating and examining physicians. The ALJ also found Plaintiff not entirely credible because she continued to use alcohol despite her treater's recommendation to stop; she had a poor work history; and she appeared to be motivated to stop drinking by a denial of benefits. Questioning Plaintiff during the hearing may have allowed the ALJ to understand whether Plaintiff's inability to stop drinking and/or her poor work history were caused by her

19

bipolar disorder.[8]  Similarly, Plaintiff would have had the opportunity to explain that her motivation to stop drinking was equally motivated by her desire to continue visitations with her children.  *See* AR 762 ("She reports that because of wanting to be a good parent that she has reduced her alcohol use").  And crucially, if the circumstances described in the letter were accurate, the ALJ could have questioned Plaintiff about the conditions that led to her "losing it" and hitting "rock bottom" (AR 177) – including whether she had experienced a manic episode, and, if so, whether that episode took place when she was medication compliant and sober.  The Court cannot conclude that the ALJ's failure to evaluate whether the circumstances presented constituted good cause for Plaintiff's absence from the hearing was harmless error.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, **REVERSES** the ALJ's decision, and **REMANDS** the case for further proceedings.  The ALJ shall evaluate whether Plaintiff's drug and alcohol use were material factors contributing to her disability based on a proper weighing of the medical opinions of record and, if there was good cause for her failure to appear and Plaintiff appears at a subsequent hearing, on Plaintiff's testimony.

**IT IS SO ORDERED.**

Dated: October 17, 2017

MARIA-ELENA JAMES
United States Magistrate Judge

---

[8] Because the Court is remanding the case for further proceedings, including potentially hearing Plaintiff's testimony, it does not decide whether the ALJ erred in evaluating her credibility.  *See* Pl.'s Mot. at 17-19.  The Court does note the ALJ's reasoning suggests she did not take into account the nature of Plaintiff's bipolar disorder, including impulsivity and poor judgment.  Moreover, the Ninth Circuit has remarked that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted); *Willig v. Berryhill*, 2017 WL 2021369, at *7 (N.D. Cal. May 12, 2017) (ALJ erred by failing to evaluate whether noncompliance with treatment was result of borderline personality disorder or depression).

20